UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CITY OF PONTIAC GENERAL
EMPLOYEES' RETIREMENT SYSTEM,
On Behalf of Itself and All Others Similarly
Situated,

    Plaintiff,

v.                                         Case No. 1:10-CV-520

STRYKER CORPORATION, STEPHEN P.        HON. GORDON J. QUIST
MACMILLAN and DEAN H. BERGY,

    Defendants.
_____/

## OPINION

        Plaintiffs, Alaska Electrical Pension Fund, Genesee County Employees' Retirement System, and State-Boston Retirement System, on behalf themselves and a class of purchasers of the common stock of Stryker Corporation (excluding Defendants and other insiders), have sued Defendants, Stryker Corporation ("Stryker"), Stephen P. MacMillan, and Dean H. Bergy, alleging securities fraud in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Pursuant to the Court's January 3, 2011, Memorandum Order, Plaintiffs filed their Amended Complaint on March 25, 2011. On April 19, 2011, Defendants filed a motion to dismiss, seeking dismissal solely on grounds of noncompliance with Rule 8 and reserving their right to file a separate motion under Rules 12(b)(6) and 9(b) should the Rule 8 motion be denied. By Order entered May 5, 2011, the Court denied Defendants' request for expedited consideration but indicated it would consider the separate Rule 8 motion. The motion is now fully briefed and, for the reasons set forth below, will be denied.

## I. BACKGROUND

### A. The Alleged Fraud

Stryker is a publicly-traded medical technology company that produces a broad array of medical devices and products, including orthopaedic surgical implants, such as hips and knees. (Amended Complaint ("AC") ¶¶ 2, 22.) Stryker operates through two business segments, Orthopaedic Implants and Medical/Surgical Equipment. (*Id.* ¶ 55.) At all times relevant to Plaintiffs' allegations, Defendant MacMillan was Stryker's President and CEO and Defendant Bergy was Stryker's CFO. (*Id.* ¶¶ 23, 24.) Because it manufactures medical devices, Stryker is subject to regulation by the Food and Drug Administration ("FDA") under the Medical Device Amendments of 1976 to the federal Food, Drug and Cosmetic Act and the Safe Medical Devices Act of 1990, as well as the regulations promulgated under those Acts. (*Id.* ¶ 60.) For a number of years, Stryker management has maintained a goal of growing earnings per share ("EPS") at a 20% annual rate. As of 2007, Stryker had met that goal every year since going public in 1979, with the exception of 1999 – the year after it purchased Pfizer's Howmedica orthopaedic business for $1.9 billion. (*Id.* ¶¶ 3, 56.)

Although the Amended Complaint's thickness suggests otherwise, the details of the alleged fraudulent scheme are actually quite simple. Plaintiffs allege that in order to achieve its 20% EPS annual growth benchmark, Stryker cut corners on its quality and compliance systems, which

> (i) violated federal regulations regarding the manufacture of medical devices; (ii) subjected the Company to unnecessary risks of sales disruptions and lower revenues due to product recalls; and (iii) hid hundreds of millions of dollars in additional compliance costs both prior to and during the Class Period, making the Company appear more profitable than it actually was.

(*Id.* ¶ 63.) Plaintiffs further allege that both prior to and during the class period, commencing on January 25, 2007, Defendants were aware of the foregoing manufacturing deficiencies and quality

and safety concerns yet reported favorable financial results and continued to affirm Stryker's abilty to achieve 20% EPS growth, double digit revenue growth, and gross margin expansion without disclosing the truth about the nature and extent of Stryker's quality and compliance problems.  (*Id.* ¶¶ 4, 5, 64.)  These issues were first made public on June 19, 2007, when the FDA published a warning letter it had previously sent to Stryker's management citing quality control problems and regulatory violations at Stryker's Cork, Ireland orthopaedic manufacturing facility ("Cork facility").  (*Id.* ¶¶ 5, 66.)  However, Defendants minimized the effect of the warning letter in a statement issued one month later, which advised investors that Stryker had already taken corrective action at the Cork facility and considered its operations in full compliance with FDA regulations.  (*Id.* ¶¶ 6, 140, 141.)  Defendants' assurances enabled them to continue to artificially inflate the price of Stryker common stock through their positive financial reports and growth projections.  (*Id.* ¶ 202.)

Investors began to learn the full extent of Stryker's quality and compliance deficiencies on January 15, 2008, when the FDA published a second warning letter it had previously sent to Stryker regarding its Mahwah, New Jersey orthopaedic manufacturing facility ("Mahwah facility").  (*Id.* ¶ 7, 75.)  Shortly thereafter, on January 22, 2008, Stryker announced a recall of Trident hip implants manufactured at the Cork facility. Then, on May 2, 2008, Stryker announced that it had received a third warning letter, this time regarding its Biotech division located in Hopkinton, Massachusetts.  Stryker also announced that it was expanding its quality and compliance initiatives to a company-wide "Qaulity Action Plan."  (*Id.* ¶¶ 9, 77.)  A week later, Defendants disclosed that the expanded initiatives would cost the company about $50 million per year for the next several years (up from the $10-20 million range estimated in January 2008).  Defendants also indicated that the Trident hip implant recall would impact Stryker's operations into the second half of the year.  (*Id.* ¶¶ 174, 176.)  In spite of these disclosures, Plaintiffs allege, Defendants prevented a total collapse of the price of

3

Stryker stock by slowly revealing over many months the true impact the company's quality and compliance initiatives and the Trident hip recall would have on Stryker's financial performance. (*Id.* ¶¶ 7-12, 171, 177, 183.)  On November 13, 2008, the last day of the class period, Defendants disclosed that Stryker was still recovering from the loss of revenue and market share caused by the Trident hip recall and that gross margins would decline even further than expected due to cost of the company's quality initiatives.  (*Id.* ¶¶ 12, 191, 192.)  On November 20, 2008, Stryker's stock closed at $36.48 per share – a 52% decline from the high of $76.48 during the class period on December 26, 2007.  (*Id.* ¶ 13.)

### B. The Amended Complaint

Plaintiffs' Amended Complaint spans 107 pages and includes 228 paragraphs.  In an effort to provide some organization corresponding to pleading topics or requirements, Plaintiffs have divided the Amended Complaint into the following sections: (i) Nature of the Action (¶¶ 1-14); (ii) Jurisdiction and Venue (¶¶ 15-18); (iii) Parties (¶¶ 19-30); (iv) Confidential Sources (¶¶ 37-54); (v) Substantive Allegations (¶¶ 55-125); (vi) Materially False and Misleading Statements Made During Class Period (¶¶ 126-196); (vii) Additional Scienter Allegations (¶¶ 197-205); (VIII) Loss Causation/Economic Harm (¶¶ 206-218); (ix) Applicability of Presumption of Reliance: Fraud on the Market Doctrine (¶¶ 219-220); (x) No Safe Harbor (¶ 221); and (xi) legal claims (¶¶222-228).

Primarily at issue in the instant motion are the allegations set forth in the section captioned "Materially False and Misleading Statements During Class Period."  In this section, Plaintiffs quote various statements by Defendants during the class period, often in one or more extensive block quotations, from press releases, conference calls, publicly-filed documents, and third-party

publications.[1]  In many instances, portions of block quotations are emphasized with italics and bolding; no explanation of the significance of such emphasis is provided.  For example, paragraph 169 contains the following statement from an April 17, 2008, conference call with analysts regarding Stryker's 2008 first quarter results:

> Defendant Macmillan:
>
> At this point, we would also like to give you an update on our quality and compliance initiatives.
>
> In a nutshell, *we are currently making major investments of money and people to upgrade and harmonize our quality and compliance systems across the Company.* In simple terms, *we have embarked on the journey from decentralized plants with different QA systems to a system with more common standards and greater consistency.  This is clearly what FDA expects and frankly, it will make us an even better Company*.  This journey will take time but we are fortunate to have both the financial strength and organizational commitment to make these investments now.  We're mobilized and we're on it.

(*Id.* ¶ 169 at 70).[2]

Plaintiffs include Defendants' January 25, 2007, February 6, 2007, February 28, 2007, April 18, 2007, July 19, 2007, July 20, 2007, October 17, 2007, January 22, 2008, April 17, 2008, May 2, 2008, May 8, 2008, July 17, 2008, October 16, 2008, and November 13, 2008, statements in the false and misleading statement section.  In paragraph 128, Plaintiffs allege that Defendants' statements in a January 25, 2007, press release and conference call (the first day of the class period) were materially false and misleading because Defendants misrepresented and failed to disclose certain adverse facts listed in subparagraphs (a) - (k).[3]  In paragraph 129, Plaintiff's allege that the

---

[1] Plaintiffs also quote extensive portions of third-party statements, such as analyst reports. (See AC ¶¶ 138, 166, 190.)

[2] Many paragraphs, such as ¶ 169, contain several pages of quoted material.

[3] The list includes:

  (a) that the Company's manufacturing facilities, including Stryker's facilities in Cork, Ireland, Mahwah, New Jersey and Hopkinton, Massachusetts were in material noncompliance with

5

January 25, 2007, statements were also false and misleading because the Cork facility had received a Form 483 (an FDA form that precedes a warning letter) "and Defendants therefore knew, or should have known, that the Cork facility was in material non-compliance with federal regulations, including CGMP requirements."  Paragraphs 128 and 129 provide the template for each of the subsequent statements through the April 17, 2008, statements.  That is, Plaintiffs allege that each of those statements "were materially false and misleading for the reasons stated in ¶ 128," in addition to any other reason specified for that statement.  (*See, e.g.*, *id.* ¶ 135 ("The statements in

---

federal regulations regarding the manufacture and sale of medical devices, including the federal Quality System Regulation (21 C.F.R. Part 820) which sets forth CGMP [current good manufacturing process] requirements;

(b) that Stryker's quality control and regulatory compliance systems and procedures were materially underfunded, understaffed and inadequate to ensure that its medical devices were designed, produced and sold in accordance with federal regulations, including CGMP requirements;

(c) that certain products, including medical devices manufactured at Stryker's Cork, Mahwah, and Hopkinton facilities were "adulterated" within the meaning of section 501(h) of the Federal Food, Drug, and Cosmetic Act (21U.S.C. § 351(h)) and subjected the Company to losses and risks caused by product recalls due to Stryker's failure to establish, maintain and document manufacturing systems and procedures designed to prevent and correct the production of nonconforming products and other quality problems in violation of federal regulations, including CGMP requirements;

(d) that Stryker had failed to establish and maintain an adequate organizational structure to ensure that its medical devices were designed, produced and sold in accordance with federal regulations, including CGMP;

(e) that Stryker was on notice of material and continuing problems in the design and nonconforming production of its hip-replacement systems since at least January 2005 when it began receiving complaints from patients who had received the devices;

(f) that Stryker failed to maintain procedures to ensure the reporting to the FDA of recalls of nonconforming products which presented a risk to health, as required by the Federal Corrections and Removals Regulation (21 C.F.R. Part 806);

(g) that Stryker failed to maintain procedures to ensure that the serious adverse events caused by the Company's medical devices were reported to the FDA, as required by the Medical Device Reporting Regulation (21 C.F.R. Part 803);

(h) that Stryker failed to maintain procedures to ensure that its OP-1 products were produced, marketed, sold in accordance with FDA requirements under the Humanitarian Device Exemption;

(i) that Stryker's reported earnings, revenues, and gross margins were materially overstated and could not be sustained because they did not include the true costs needed to ensure that the Company's medical devices were designed, produced and sold in accordance with federal regulations, including CGMP requirements;

(j) that Defendants' statements and opinions concerning Stryker's projected earnings, revenues, and gross margins were knowingly false when made because they did not include the true costs needed to ensure that the Company's medical devices were designed, produced and sold in accordance with federal regulations, including CGMP requirements; and

(k) that based on the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and growth.

the April 18, 2007 press release and conference call referenced above in ¶ 134 were materially false and misleading when made for the reasons stated in ¶ 128 and because Defendants knew, but failed to disclose, that Stryker had received a warning letter from the FDA on March 15, 2007 outlining numerous quality deficiencies and regulatory violations at the Cork, Ireland facility."). Plaintiffs do not allege that any statement made after April 17, 2008, was false or misleading.[4]

## DISCUSSION

The issue raised by the instant motion is whether the Court should dismiss the Amended Complaint under Rule 8 because of its length and/or because it is a puzzle-type pleading. Whether a complaint should be dismissed for failure to comply with Rule 8 is a matter within the district court's discretion. *See Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 519 (6th Cir. 2006) (reviewing the district court's Rule 8 dismissal under an abuse of discretion standard).

Rule 8 sets forth the notice pleading requirements of the Federal Rules of Civil Procedure. The rule provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1). In applying Rule 8, a court must construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e). The Supreme Court has explained that

> a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 998 (2002) (internal quotations and citations omitted). Although this standard is liberal, Rule 8 still requires a complaint to provide the

---

[4] Plaintiffs assert in their response that the Amended Complaint alleges that the post-April 17, 2008, statements were false and misleading because they were partial disclosures that continued to conceal the full truth. (Pls.' Mem. in Opp'n to Defs.' Mot. at 14 n.11.) The Amended Complaint makes no such allegation.

defendant "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). This means more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65).

Whether a complaint satisfies the "short and plain" requirement "depends on the circumstances and the type of case." *Jumonville v. Dep't of Treasury*, No. 94-30583, 1995 WL 136507, at *2 (5th Cir. Mar. 16, 1995) (citing *Atwood v. Humble Oil & Ref. Co.*, 243 F.2d 885, 889 ) (5th Cir. 1957)). In the context of securities fraud claims, greater detail is required because plaintiffs must satisfy the requirements of both Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737. Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances surrounding fraud. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The PSLRA augments Rule 9(b)'s particularity requirement in two ways. First, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Second, for each allegedly false or misleading actor or omission, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Although these heightened requirements can justify more detailed complaints, they are not a "green light" for plaintiffs to inundate defendants and judges with reams of redundant or irrelevant allegations and material. *See, e.g., Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 451 (S.D.N.Y. 2010) ("While securities fraud claims must be pled with particularity, a plaintiff need not lard a

8

pleading with streams of consciousness from confidential witnesses and block quotes from analyst calls. Plaintiff's hydra-like complaint sprawls over 243 paragraphs, some silted with more than 500 words."); *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1278 (E.D. Wash. 2007) ("A complaint need only set forth sufficient facts to notify the opposing party of the claims against it and the factual basis of those claims. Factual allegations will, of course, be lengthier and more detailed when a plaintiff's claims must be alleged with particularity . . . however, even complaints alleging fraud must be more 'user-friendly' than the SCAC."); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109 SBA, 2000 WL 1727405, at *19 (N.D. Cal. Sept. 29, 2000) ("Tension between Rule 8 and the particularity requirements of the PSLRA and 9(b), to the extent any true tension exists, is not a license to bombard defendants and courts with unwieldy puzzle-style complaints.") Some courts have even remarked that sheer length, alone, can justify a Rule 8 dismissal of a securities complaint. *See Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 428 n.2 (S.D.N.Y. 2010) ("The Court notes that the extreme length of the Amended Complaint is an independent ground for dismissal, pursuant to Rule 8(a)(2) of the federal Rules of Civil Procedure, which requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"); *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00606-PAB-CBS, 2010 WL 5129524, at *7 (D. Colo. Dec. 10, 2010) (noting that dismissal of the 135-page, 237-paragraph complaint would be proper under Rule 8(a) but concluding that dismissal on the merits was most appropriate because the plaintiff had already been afforded an opportunity to amend his complaint).

Defendants' primary argument for dismissal is that the Amended Complaint violates Rule 8(a) because it is a "puzzle pleading." This type of pleading may take different forms, but its essence is that rather than providing a plain statement of the claim, it requires the reader to "puzzle" out the details of the plaintiff's claim. The court in *In re Alcatel Securities Litigation*, 382 F. Supp. 2d 513 (S.D.N.Y. 2005), described such a pleading:

9

> Although Plaintiffs' 250-paragraph, 102-page Amended Complaint is long, it states very little with particularity. Plaintiffs list various statements – often setting forth lengthy quotations from various releases by Defendants' officers and securities analysts – then follow each with a similar (in most cases identical) laundry list of "specific" reasons why the statements are allegedly false. (*See* Amended Complaint ¶¶ 139, 142, 153, 172, 183.) Plaintiffs neglect to make it clear what portion of each quotation constitutes a false representation, or which statements link up with which issues in the laundry list, placing the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts.

*Id.* at 534. *See also Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1243 (N.D. Cal. 1998) (noting that the complaint lumped all statements alleged to be misleading "together in one unwieldy 14-page segment . . . and then follow[ed] that catalog with a three-page laundry list of reasons why *all* the statements were allegedly false when made" and required "the reader to sort out and pair each statement with a supposedly relevant 'true fact'"). Typically, portions of alleged misleading statements will be emphasized in bold and italicized text, sometimes intending to highlight the actionable statements, *see Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 530 n.11 (D.N.J. 2010), sometimes for no apparent reason at all. *See In re Splash Tech. Holdings Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074 (N.D. Cal. 2001) ("The fact that certain sections of the [analyst] report have been highlighted is not a reliable guide to determining which statements are alleged to be false, as bolded statements sometimes do not turn out to be actionable, while non-bolded statements sometimes are actionable.").

Defendants assert that the Amended Complaint is a puzzle that violates Rule 8 because it leaves it to Defendants and the Court to figure out what statements are alleged to be false and why. Defendants point out that the Amended Complaint includes long block quotations containing multiple statements – partially or entirely bolded or italicized for no apparent reason – followed by blanket assertions of falsity (without identifying the specific statements). Defendants further note that after ascertaining the false statement, the reader must then refer to the laundry list of adverse facts in paragraph 128 in order to figure out why the statement was false. For example, Defendants

note that because the laundry list includes separate allegations for historical facts and future projections, the reader is left to wonder whether the subpart concerning future projections is meant to apply to a statement containing historical facts, and vice versa. Although the Amended Complaint follows the same pattern for all of the quoted statements, Defendants point to the paragraphs concerning Defendants' January 23, 2008, and April 17, 2008, statements as being particularly troublesome. Defendants also note that statements made after April 17, 2008, through the end of the class period, are never alleged to be false, so it is unclear whether Plaintiffs intend to assert that such statements are false.

Plaintiffs respond that the Amended Complaint is not a puzzle because it provides sufficient information to allow a reader to ascertain the asserted false and misleading statements and the reasons they are alleged to be false. First, regarding the laundry list, Plaintiffs contend that structuring their pleading to refer back to this list was not only proper, because most of Defendants' statements were false or misleading for the reasons set forth in paragraph 128, but it was also efficient because it streamlined the Amended Complaint. Plaintiffs point out that for each subsequent set of statements, in addition to referring to paragraph 128, the Amended Complaint lists additional reasons, where applicable, why the statements were false. Plaintiffs further note that when a statement is alleged to be false for a reason other than those alleged in paragraph 128, (*see, e.g.*, ¶¶ 141, 156), the Amended Complaint identifies such reason. Second, regarding sufficient identification of the alleged false and misleading statements, Plaintiffs assert that Defendant's argument is really a Rule 9(b) particularity argument not properly raised in a Rule 8 motion. Regardless, Plaintiffs contend, they have sufficiently identified the false or misleading statements by listing them in chronological order, quoting enough of the statements to provide necessary context, and emphasizing key portions of those statement in boldface italics.

11

The Court agrees with Defendants that the Amended Complaint resembles a puzzle in many respects. This is especially true with the many instances of lack of specific identification of the false and misleading statements. Setting forth several pages of block quotations followed by a general allegation that the statements are false, (*see, e.g., id.* ¶ 164 ("The statements in the January 23, 2008 press release and conference call referenced above in ¶¶ 158-63 were materially false and misleading . . . .")), is "deficient under the pleading standards," *In re Alcatel*, 382 F. Supp. 2d at 534, and the Court would be well within its discretion in dismissing the Amended Complaint and requiring Plaintiffs to amend to be more clear and direct in identifying the alleged false statements.[5] At the same time, the Court is mindful of Rule 1's command that the Federal Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Both the Court and Defendants have already spent much time digesting the Amended Complaint, and to the extent it provides a means to clarify the statements, that course is preferable to another amended pleading. *See Johnson v. Pozen Inc.*, No. 1:07CV599, 2009 WL 426235, at *15 (M.D.N.C. Feb. 19, 2009) (declining to dismiss a puzzle-style pleading where the plaintiff "winnowed down" the false and misleading statements in its response); *In re Bus. Objects S.A. Sec. Litig.*, No. C 04-2401 MJJ, 2005 WL 1787860, at *4 (N.D. Cal. July 27, 2005) (declining "to take the drastic step of dismissal based on the form of the pleading" where the alleged statements could be "glean[ed]" from the bold and italicized statements). In this regard, the Court notes that most paragraphs containing statements include an introductory phrase that identifies the subject of the statements. For example, paragraph 160, pertaining to Defendants' statements during the January 23, 2008, conference call, concerns Defendants' "positive statements about Stryker's

---

[5] Contrary to Plaintiffs' argument, Defendants' lack of specificity argument is not limited to the context of a Rule 9(b) motion. A pleading that lacks clarity is not "plain" within the meaning of Rule 8(a)(2).

financial performance and prospects." This description cabins the quoted statements that follow, limiting them to subjects such as reported EPS, revenue growth and margin expansion, and future financial projections. Similarly, the statements in paragraph 162, which covers several pages, are limited to statements that "Stryker would increase its spending on quality and compliance and 'centralize' its quality systems." (*See also* ¶ 163 ("the impact of the Trident hip recall would be minimal, and limited to the first quarter of 2008" and "the quality problems cited by the FDA did not implicate the safety of the Company's orthopaedic products"). In those instances where there is no headline phrase, (*see, e.g.,* ¶ 161), Defendants are free to assume that no statement is at issue, unless specifically identified in another paragraph.[6] (*See* ¶ 165.) In the Court's judgment, this is a reasonable manner of identifying the alleged fraudulent statements, especially as Plaintiffs themselves note that "the reader is further aided by introductory paragraphs summarizing Defendants' false and misleading statements and/or piecemeal revelations of the truth."[7] (Pls.' Mem. of Law in Opp'n at 14.)

With regard to Plaintiffs' use of a single set of reasons to explain why various statements were false, the Court believes that this is an acceptable means of identifying the reasons for falsity in these circumstances. That is, as the Court understands it both from its reading of the Amended Complaint and Plaintiffs' representations, when Plaintiffs allege that a statement was false or misleading for the reasons in paragraph 128, they intend that all reasons apply to the statement, such that there is no need to match the statement with the reason. This is a permissible way to establish falsity. *See In re Tyco Int'l Ltd.*, No. MDL 02-1335-B, 2004 WL 2348315, at *9 (D.N.H. Oct. 14,

---

[6] For purposes of clarity, the alleged false and misleading statements at issue include, in addition to those identified in the introductions, those statements specifically alleged in paragraphs 136, 141, 156, 157, and 165.

[7] Most of the alleged false and misleading statements between January 25, 2007, and April 17, 2008, concern Stryker's reported financial results and future projections.

2004) (concluding that the plaintiffs' pleading structure of identifying the misleading statements in one section and describing accounting schemes rendering the statements misleading in another section was a reasonable way of presenting their allegations). The fact that the reasons in paragraph 128 refer to both historical statements and future projections should pose no problem, as identification of a statement as either historical or forward looking is easy enough.

With regard to statements made after April 17, 2008, the Court finds nothing confusing about the absence of an allegation of falsity. For whatever reason, Plaintiffs have intentionally omitted any allegation that the statements made from May 2, 2008, through November 13, 2008, were false and misleading, just as they have omitted any allegation suggesting a reason why such statements were false. These statements are thus not at issue in Plaintiffs' claims.

Defendants also argue that the Amended Complaint is subject to dismissal because of its length. The Court concurs that the Amended Complaint is too long. It is repetitive and includes unnecessary and sometimes irrelevant material. In the Court's judgment, Plaintiffs could have easily crafted an effective pleading half or even a third as long as the Amended Complaint. And, were it the Court's job to edit pleadings, the Amended Complaint would be returned to Plaintiffs for substantial revisions. Although long, however, the Amended Complaint is neither confusing nor incomprehensible and generally fulfills the purposes of Rule 8 by giving Defendants fair notice of Plaintiffs' claims. Because "verbosity or length is not by itself a basis for dismissing a complaint based on rule 8(a)," *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008), Defendants' motion will be denied. *See also Washington v. Grace*, 353 F. App'x 678, 680 (3d Cir. 2009) ("Although Washington's amended complaint is lengthy, at nearly 80 pages, and lacks clarity in some places, we do not agree that it violated the basic pleading requirements under Rule 8. At a minimum the amended complaint provided defendants with 'fair notice' of Washington's

claims."); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Some complaints are windy but understandable.  Surplusage can and should be ignored.  Instead of insisting that the parties perfect their pleadings, a judge should bypass the dross and get on with the case."); *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 841 (D. Md. 2005) ("The twenty-page Complaint in this case is not, by virtue of its length alone, problematic.  Rather, it is the confusing, overlapping and frequently inconsistent allegations . . . that make the task of the Court much more difficult.").

## CONCLUSION

For the foregoing reasons, Defendants' Rule 8 motion to dismiss will be denied.

An Order consistent with this Opinion will be entered.


Dated: July 6, 2011              /s/ Gordon J. Quist
                                    GORDON J. QUIST
                           UNITED  STATES  DISTRICT  JUDGE